**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. No. 06-13T |
| | : | |
| ROBERT TAYLOR | : | |

GOVERNMENT'S OBJECTION TO
DEFENDANT'S MOTION TO SUPPRESS

Now comes the United States of America by and through its attorneys and hereby objects to Defendant's Motion to Suppress for the reasons stated in the attached Memorandum of Law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Lee Vilker

LEE H. VILKER
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of March, 2006 a copy of the within Objection and Memorandum was sent via regular mail, postage prepaid, to the following:

Kevin J. Fitzgerald, Esq.
Assistant Federal Defender
10 Weybosset Street, 3rd Floor
Providence, RI, 02903.

Lee Vilker
_______________________

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 06-013T |
| | ) | |
| ROBERT TAYLOR | ) | |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF
ITS OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS

Defendant Robert Taylor ("Taylor") moves to suppress all evidence seized and statements taken from him on March 19, 2005 by members of the Providence Police Department. Taylor argues that the Providence police officers lacked reasonable suspicion or probable cause to search the vehicle in which he was located and therefore that the seized evidence should be suppressed. As described in detail below, defendant's motion should be denied because the police officers on the scene had reasonable and articulable suspicion to believe that Taylor was armed and dangerous before they commenced their search of the vehicle.

**FACTS**

The facts may be stated as follows. At approximately 2:45 p.m. on March 19, 2005, three Providence police officers were operating an unmarked police vehicle on Fairfield Avenue in Providence. The officers approached 60 Fairfield Avenue, a location which was known to the officers as a high drug-trafficking area. The officers were also aware of several incidents at this location involving firearms. The officers observed several individuals standing in the lot and left their vehicle to investigate.

After the officers left their unmarked police vehicle, they saw an individual, known to the officers as Taylor, sitting in the driver's seat of a black Ford Expedition that was parked along side of 60 Fairfield Avenue. The officers recognized Taylor from prior interactions with him. Officer Zincone observed Taylor moving nervously in his seat as Taylor appeared to be concealing an item with his right hand. Officer Zincone approached the driver's side seat of the Expedition and began to speak with Taylor, where he observed Taylor attempting to conceal an item between his seat and the center console. Taylor continued to act in a nervous manner, by, *inter alia*, handing his identification to Officer Zincone even though he was not asked to do so and Officer Zincone knew him.

Due to the suspicious manner in which Taylor was behaving, Officer Zincone asked Taylor to step out of his vehicle for officer safety. As Taylor stepped out of the vehicle, Officer Zincone saw the black handle of a firearm under a towel between the driver's side seat and the center console. As Officer Zincone leaned into the car and confirmed that a firearm was under the aforementioned towel, Taylor attempted to flee on foot. After no more than a few steps, Taylor was tackled to the ground, where he stated: "That ain't my gun." The firearm seized between the driver's side seat and the center console was a Lorcin .380 caliber handgun.

## Argument

### I. The Physical Evidence Seized Should Not Be Suppressed.

The physical evidence in this case was acquired from a search of the vehicle in which the defendant was sitting. The interaction between the Providence Police and Taylor, for Fourth Amendment purposes, should be divided into two distinct phases. During the first phase, the officers approached and spoke with Taylor as he was sitting in the driver's seat of the Ford Expedition. During this part of the encounter, the officers were conducting a perfectly permissible consensual interview of Taylor. The Supreme Court has "repeatedly emphasized that not all personal intercourse between the police and citizens rises to

the level of a stop or seizure." United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997) (citing Florida v. Bostick, 501 U.S. 429, 434 (1991)). To establish that a seizure has occurred, triggering the Fourth Amendment, a defendant must first show that during his encounter with police, a reasonable person would not have felt free to leave. United States v. Sealey, 30 F.3d 7, 9-10 (1st Cir. 1994). But this alone is not enough. "[A] person's reasonable belief that he was not free to leave [i]s 'a necessary, but not sufficient condition for seizure.'" Id. at 9 (quoting California v. Hodari D., 499 U.S. 621, 628 (1991))(emphasis in original). A defendant must also establish either: (1) that the officer exerted physical force against him; or (2) that there was a show of authority by the officer and the defendant submitted to it. Young, 105 F.3d at 6 ("in the absence of an officer's exertion of physical force or an individual's submission to a show of authority, no seizure occurs"). Accord, United States v. Smith, 423 F.3d 25, 31-32 (1st Cir. 2005)("To constitute a seizure, there must not only be a show of authority sufficient to make a reasonable person believe that he was not free to leave, but also submission to that authority."); Sealey, 30 F.3d at 10 (with respect to a seizure based upon an officer's show of authority, Hodari D. made it clear that no Fourth Amendment seizure occurs until a suspect submits to police authority").

During the initial phase of the encounter with Taylor, the officers merely spoke with Taylor as he was sitting in the Expedition. Neither Taylor nor his vehicle were stopped or searched during this part of the encounter so as to implicate the Fourth Amendment.

The next phase of the officers' interaction with Taylor commenced when one of the officers entered the Ford Expedition to determine whether a firearm was present. It was at that moment that the search of the vehicle began. The question before the Court is whether the Providence police officers had reasonable suspicion to enter and search the vehicle to determine whether a firearm was present. The evidence will reflect that by the time that Officer Zincone began his search of the vehicle, he had clear, articulable and reasonable suspicion to believe that a firearm was located within the vehicle. Before the search of the car began, Officer Zincone observed and was aware of several factors that caused him to reasonably suspect that Taylor was armed and dangerous. These factors included: (1) Taylor moving suspiciously in his seat, (2) Taylor attempting to conceal an item between his seat and the center console, (3) Taylor providing his identification to the officer without being requested to do so, (4) observing what appeared to be the handle of a firearm in the exact location where Taylor had been attempting to conceal an object moments beforehand, and (5) the

location itself was known to the officers as a high drug-trafficking area in which firearms related incidents had occurred. These facts gave rise to more than reasonable suspicion on the part of the police that Taylor was armed and dangerous.

The Court of Appeals for the First Circuit has described the Terry stop standard in the following terms:

> Over time, the Terry doctrine has developed into an extremely elastic rule with a broad range of application. In its modern adaptation, the doctrine provides that "based merely on a reasonable and articulable suspicion, a police officer may make a brief stop or 'seizure' of an individual to investigate suspected past or present criminal activity."

United States v. Acosta-Colon, 157 F.3d 9, 14 (1st Cir. 1998) (*quoting* United States v. McCarthy, 77 F.3d 522, 529 (1st Cir.), cert. denied, 519 U.S. 991 (1996)). Put another way, an officer may conduct such a stop if he "'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.'" United States v. Woodrum, 202 F.3d 1, 6 (1st Cir. 2000) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). The detention "will be upheld as constitutionally permissible so long as it was 'justified at its inception,'" and so long as the officer's subsequent actions were "'reasonably related in scope to the circumstances which justified the [initial] interference.'" Acosta-Colon, 157 F.3d at 14 (quoting

United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)).

During a Terry stop, an officer may frisk the subject for weapons if he "'is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'" Woodrum, 202 F.3d at 13 (quoting Terry, 392 U.S. at 24). To have such a justification, "'[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger.'" United States v. Taylor, 162 F.3d 12, 17 (1st Cir. 1998) (quoting Terry, 392 U.S. at 27).

At the point at which the police officers searched Taylor's car, they certainly had reasonable suspicion that "criminal activity may be afoot." United States v. Woodrum, 202 F.3d 1, 6 (1st Cir. 2000)(*quoting* Terry v. Ohio, 392 U.S. 1, 30 (1968)). The police officers were in a high drug-trafficking area and observed defendant acting nervously as he was interviewed. In particular, an officer observed Taylor attempting to conceal an item between the driver's side seat and the center console. As Taylor was stepping outside of the vehicle, the officer observed a handle of a gun protruding from underneath a towel. The officers clearly had reasonable suspicion that Taylor was armed and dangerous to the officers.

Prior decisions of the First Circuit make abundantly clear that Taylor's detention did not even approach the status of a formal or de facto arrest. Taylor, 162 F.3d at 21-22 (defendants not under de facto arrest when police cars blocked in their car, 10-12 officers surrounded them, at least two officers drew their weapons, defendants were placed face-down on the ground and frisked, and the detention lasted about 30 minutes); United States v. Jackson, 918 F.2d 236, 238-40 (1st Cir. 1990) (defendant not under de facto arrest when police blocked in his car, approached him with weapons drawn, and frisked him for weapons); United States v. Quinn, 815 F.2d 153, 155-59 (1st Cir. 1987) (defendant not under de facto arrest when police blocked his car, he was surrounded by five officers, he was interrogated for 25 minutes late at night at a remote cottage, and police would not give him back his identification); United States v. Trullo, 809 F.2d 108, 113 (1st Cir.) (defendant held at gunpoint by police officer not under de facto arrest), cert. denied, 482 U.S. 916 (1987). Rather, the detention was a valid Terry stop supported by much more than the required reasonable suspicion to believe that Taylor was in unlawful possession of a firearm and that he was armed and dangerous.

The police officer's conduct in searching Taylor's vehicle was a valid safety measure that was entirely consistent with the Terry rationale. For example, this case compares favorably with

Woodrum, where officers approaching a taxi saw the defendant lean to one side and put his hand underneath his jacket. Woodrum, 202 F.3d at 13. There, and certainly here, the police had a "reasonable suspicion that the [defendant] was concealing a weapon." Id. As the Woodrum Court observed, "[t]his is exactly the kind of situation in which an officer's experience deserves deference." Id. See also United States v. Proctor, 148 F.3d 39, 42 (1st Cir. 1998) (officer reasonably believed narcotics suspect was armed and dangerous based on bulge in his jacket that turned out to be a bag of marijuana).

In arguing that the police lacked reasonable suspicion, Taylor relies on two recent First Circuit cases, neither of which support his contention. First, defendant relies on United States v. McKoy, 428 F.3d 38, (1st Cir. 2005), in which officers observed the defendant with his car parked illegally in a high-crime area. As the officers were approaching the car, they observed the defendant moving his arm toward the center console area of the vehicle. Id. at 39. Based on these facts, the officers asked the driver to get out of the car and patted him down, finding a quantity of cocaine on his person. Id.

Based on these facts, the Court of Appeals concluded that the police officers did not have reasonable suspicion to believe that the defendant was dangerous and posed a danger to their safety. In so finding, the Court of Appeals noted that "there

was nothing sinister or menacing about [defendant]'s reaching movement toward the center console. Although it is possible that such a movement could be made to get a weapon, the movement is also consistent with reaching for a driver's licences or registration." Id. In addition, the Court of Appeals noted that the underlying crime being investigated was a parking violation and expressed concern that approving a search would "come[] too close to allowing an automatic frisk of anyone who commits a traffic violation in a high-crime area." Id.

The facts of McKoy are distinguishable from those of the case at bar for two primary reasons. First, McKoy involved parking violations and the First Circuit expressed concern that a ruling upholding that search would allow the police to pat down any individual stopped for a parking violation in a high-crime area. Second, and more significantly, Taylor's conduct in this case was far more menacing than that of the McKoy defendant. Whereas the defendant in McKoy was merely observed moving his arm toward the center console, Taylor was observed attempting to conceal an object next to the driver's seat while he was talking with the police. And when Taylor began stepping outside of the vehicle, the officer actually observed the handle of a gun at the exact spot that the defendant was manipulating. In addition, Taylor, who was previously known to the police, was observed acting in a nervous manner. The police officers here had clear

and articulable reason to believe that Taylor was armed and dangerous and that their safety was in danger.

Next, defendant relies on United States v. Ivery, 427 F.3d 69 (1st Cir. 2005). In Ivery, the officers stopped the defendant's vehicle after observing the defendant driving a vehicle with no front license plate and a partially detached rear plate. As the officers approached the vehicle, they observed an open glove compartment in which there was a box of sandwich bags. Id. at 70. The officers observed that the defendant was acting in a nervous manner and asked him to exit the vehicle. The officers proceeded to search the car where they found a loaded pistol. Id.

The Court of Appeals in Ivery upheld the search of the vehicle, finding that the aforementioned factors supported the officers' reasonable suspicion that the defendant was armed and dangerous. Id. at 73. Although cited by the defendant, Ivery supports the Government's argument that the Providence police officers had reasonable suspicion that Taylor was armed and dangerous. Indeed, the facts of this case are even stronger that those found to justify the search in Ivery, as in this case the officer actually observed the defendant attempting to conceal an

item near the driver's seat.[1]

In sum, the Providence police officers had articulable and reasonable suspicion that Taylor was armed and dangerous. Faced with an individual in a high-crime area acting nervously and attempting to conceal an item within his reach, the police officers acted prudently in requesting that he step outside of the vehicle. When the officer then observed the handle of a firearm in that same location, he was fully justified in searching the vehicle and the defendant. Defendant's motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Lee Vilker

Lee H. Vilker
Assistant U. S. Attorney

1. Defendant does not articulate why his statement denying that the firearm was his should he suppressed. Defendant blurted out this statement as he was being tackled after attempting to flee. Clearly, there was no "interrogation" for purposes of Miranda. See Rhode Island v. Innis, 446 U.S. 291 (1980)(interrogation for purposes of Miranda occurs only where there is "express questioning or its functional equivalent").

Certificate of Service

I hereby certify that on the 10th day of March 2006, a copy of the within "Government's Memorandum of Law In Opposition to Defendant's Motion To Issue Subpoena For Records" was mailed by certified mail, postage pre-paid, to Kevin J. Fitzgerald, Esq., Assistant Federal Defender, 10 Weybosset Street, 3rd Floor, Providence, RI, 02903.

Lee Vilker