**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR No. 06-13T** |
| | : | |
| **ROBERT TAYLOR** | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A DOWNWARD DEPARTURE**

Defendant Robert Taylor ("Taylor") has moved this Court for a downward departure under the Guidelines based on: (i) the purported over-representation of his criminal history score and (ii) the fact that the firearm he possessed was unloaded. As argued below, Taylor's Criminal History Category does not over-represent the true nature of his criminal history. Moreover, the absence of ammunition in a firearm is an insufficient ground to warrant a downward departure. Defendant's motion should be denied.

I. Criminal History Category

Defendant first argues that his Criminal History Category of IV over-represents the true nature of his criminal history. To the contrary, Taylor has well-earned his criminal history points.

In United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998) (en banc), the First Circuit recognized that "departures for atypical criminal history are specifically encouraged under U.S.S.G. § 4A1.3." Thus, a defendant who does not qualify for a vertical departure may still be entitled to a horizontal

departure if the sentencing court finds that the assigned criminal history category significantly over-represents or under-represents the seriousness of defendant's prior convictions. U.S.S.G § 4A1.3; United States v. Delgado-Reyes, 245 F.3d 20, 23 (1st Cir. 2001). In the policy statement regarding the adequacy of the criminal history category, the Commission provided the following recitation as an example of a case where the CHC significantly over-represents defendant's criminal history and likelihood of recidivism:

> An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure . . . .

U.S.S.G § 4A1.3.

Three of defendant's seven criminal history points stem from a 2002 federal conviction in the District of Massachusetts for which he received a sentence of 18 months incarceration. Defendant was convicted of conspiracy to distribute heroin, possession with intent to distribute heroin and assault on a federal officer. (PSR ¶ 32) The offense conduct in that case included selling a sample size of heroin to an undercover DEA agent, negotiating and conspiring to distribute a kilogram of heroin, delivering nearly a kilogram of a substance that later

apparently was determined to be fake heroin[1] and leading the DEA on a wild car chase through a populated suburb in Massachusetts. Defendant clearly earned these three criminal history points.

Defendant properly received an additional criminal history point for his 2000 convictions for driving with a suspended license and larceny under $500, offenses for which the defendant received a sentence of 1 year probation. (PSR ¶ 30) And defendant received another criminal history point for his 2003 convictions for recklessly operating a motor vehicle and operating a motor vehicle with a suspended license. (PSR ¶ 33). These two criminal history points were also well-earned by Taylor.

Finally, defendant received an additional two criminal history points because be committed the instant offense while serving his federal supervised release term in Massachusetts. (PSR ¶ 36.) Imposition of these two criminal history points was required by the Guidelines, and justifiably so. Inclusion of these points does not "double count" his sentence, as defendant suggests. Rather, it recognizes that defendant deserves additional punishment for violating the terms of his original sentence in Massachusetts. By possessing the firearm in

[1] Although defendant engaged in negotiations to distribute a kilogram of heroin and conspired to deliver that quantity, the District Court in Massachusetts held that defendant was only responsible for the quantity of actual heroin that he distributed as a sample.

question, defendant not only violated the prohibition against felons possessing firearms, he violated the terms of the sentence that was imposed in Massachusetts. In short, defendant's criminal history category of IV adequately represents the true nature of his criminal history.

II. Unloaded Firearm

Without citing to any authority, defendant next argues that a departure is warranted because the firearm he possessed was unloaded. This argument defies the plain reading of the Guidelines and is contrary to common sense.

The relevant section of the Guidelines, section 2K2.1, does not distinguish between firearms that are loaded and those that are not. This is undoubtedly so because the possession of unloaded firearms by felons poses a danger of violence as there is no way for others who encounter the felon to know if the firearm is or is not loaded. Moreover, the seizure of an unloaded firearm may simply signify that the defendant or an associate has temporarily stored the ammunition in another location, to be used at another time. The prohibition against felons possessing firearms is designed to prevent felons from possessing a weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). No departure is warranted

simply due to the mere happenstance that the firearm was unloaded at the exact moment that law enforcement intervened.

Defendant circuitously argues that the Guidelines' failure to differentiate between loaded and unloaded firearms indicates that the Guidelines presume that all firearms are loaded. To the contrary, if the drafters of the Guidelines had wished to differentiate between loaded and unloaded firearms, they easily could have done so, either by enhancing a sentence if ammunition were found or decreasing a sentence if the firearm in question were unloaded. (See, e.g., USSG § 2K2.1(b)(2), which reduces the offense level if the firearm were possessed solely for a lawful sporting purpose or collection.) That the Guidelines do not distinguish between loaded and unloaded firearms signifies that they are intended to punish the possession of a firearms by felonss, regardless of whether the firearm happens to be loaded when it is seized.

For all of these reasons, the United States respectfully requests that defendant's motion for a downward departure be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Lee H. Vilker

LEE H. VILKER
Assistant U.S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
Fax: (401) 709-5001
lee.vilker@usdoj.gov

Dated: November 3, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of November, 2006, a copy of the within Government's Memorandum of Law was served electronically on the following:

Kevin Fitzgerald, Esquire
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903

Maureen Bradley, U.S. Probation Officer
United States Probation Office
2 Exchange Terrace, 3rd Floor
Providence, RI 02903.

/s/ Lee H. Vilker

LEE H. VILKER
Assistant U.S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele: (401) 709-5000
Fax: (401) 709-5001
lee.vilker@usdoj.gov